**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BOND SAFEGUARD INSURANCE COMPANY,**

                **Plaintiff,**

**-vs-**                                                    **Case No. 6:09-cv-1504-Orl-31GJK**

**JAMES ROBERT WARD, THE SARAH CAITLIN WARD IRREVOCABLE TRUST, THE MALLORY ELIZABETH WARD TRUST, SARAH CAITLIN WARD and MALLORY ELIZABETH WARD AS personal representatives of the Estate of Diane Elizabeth Ward**

                **Defendants.**

## ORDER

This matter comes before the Court on the Motion for Partial Summary Judgment (Doc. 45) filed by the Plaintiff, Bond Safeguard Insurance Company ("Bond Safeguard"), the response (Doc. 96) filed by the Defendants, and the reply (Doc. 99) filed by Bond Safeguard. As outlined below, the Court finds that Bond Safeguard is entitled to only part of the relief it seeks in the motion.

**Background**

Except where noted, the information in this section is undisputed. Defendant James Ward ("Ward") was a real estate developer. Bond Safeguard agreed to issue construction bonds on behalf of companies owned or controlled by Ward, including Land Resource, LLC ("Land Resource") and its subsidiaries. In exchange for Bond Safeguard's agreement to issue those

bonds, Ward agreed to indemnify Bond Safeguard for any losses it suffered in connection with the bonds.

Ward's companies ran into financial difficulties and were unable to complete a number of projects for which Bond Safeguard had issued bonds. In August, 2008, Brunswick County, North Carolina called the bond covering a development called "Riversea Plantation." That same month, Campbell County, Tennessee called the bonds covering a development known as "The Villages at Norris Lake" (henceforth, "Norris Lake"). Subsequently, Bond Safeguard paid $542,371.94 on the Riversea Plantation bond, and paid $7,000,000 to settle claims against the Norris Lake bonds.

On September 1, 2009, Bond Safeguard filed the instant suit, seeking to recover these sums from Ward under the General Agreement of Indemnity (Doc. 1 at 18-21) (henceforth, the "Indemnity Agreement") entered into by Ward and Bond Safeguard. By way of the instant motion, Bond Safeguard seeks partial summary judgment as to Ward's liability on the Indemnity Agreement, his liability as to the $542,371.94 paid in connection with the Riversea Plantation bond and the $7,000,000 paid in connection with the Norris Lake bonds, and the entry of partial final money judgments as to those two sums.

**Legal Standard**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**Estoppel**

Ward argues that there is a genuine issue of material fact as to whether Bond Safeguard released him from all liability under the Indemnity Agreement. Ward contends that David Campbell ("Campbell"), the president of Bond Safeguard, verbally agreed that Bond Safeguard would not pursue claims against Ward under the Indemnity Agreement in exchange for Ward providing information about Land Resource's lenders and investment partners. According to Ward, Campbell asked for information about the lenders and investment partners so that Bond

Safeguard could seek recovery from them. Ward contends that he had the information sent to Bond Safeguard, and he has provided an affidavit in support of this contention. Bond Safeguard does not dispute that Ward provided information about Land Resource's lenders and investment partners. The company does deny, however, that it promised to release Ward from his obligations under the Indemnity Agreement if he provided such information.

The parties agree that the Indemnity Agreement is governed by Georgia law. Under Georgia law, an oral agreement to release a debt without new consideration is not enforceable. *NationsBank, N.A. (South) v. Tucker*, 500 S.E.2d 378, 383 (Ga.App. 1998). Detrimental reliance may supply the necessary consideration for such an agreement, as a matter of waiver and estoppel. *Everts v. Century Supply Corp.*, 590 S.E.2d 199, 201 (Ga.App. 2003). To establish promissory estoppel under Georgia law, a party must establish that (1) the defendant made a certain promise or promises; (2) the defendant should have reasonably expected the plaintiff to rely on such promise or promises; (3) the plaintiff did, in fact, rely on such promise or promises to his detriment; and (4) an injustice can be avoided only by the enforcement of the promise, because the plaintiff surrendered, foregoes, or rendered a valuable right. *Id.* at 202.

Viewed in light of the requirements of the Georgia doctrine of promissory estoppel, Ward's argument fails for at least two reasons. Even assuming Campbell promised Bond Safeguard would not pursue Ward if he provided the information, Ward has not made any showing that he suffered any detriment as a result of his reliance. He does not even argue that he is in any way worse off for having provided that information to Bond Safeguard. Thus, the alleged release would fail for lack of consideration. Further, Ward has not made any showing that by handing over these names,

he was surrendering any sort of "valuable right," as required to establish the fourth element of promissory estoppel under Georgia law.

Ward has failed to demonstrate the existence of a genuine issue of material fact as to whether promissory estoppel applies here. Therefore, as a matter of law, Campbell's alleged promise cannot be enforced.

**Liability – Consultation**

Ward also argues that he cannot be held liable under the Indemnity Agreement because Bond Safeguard breached it. More particularly, he argues that Bond Safeguard failed to comply with a condition precedent in the Indemnity Agreement before opting to make the payments in connection with the Riversea Plantation and Norris Lake bonds.

The Indemnity Agreement defined Bond Safeguard as the "Company." Land Resource and the companies it owned or controlled were the "Principal," and those companies plus Ward in his individual capacity were the "Indemnitors." Originally, the Indemnity Agreement provided that

> The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

(Doc. 1 at 18). Prior to signing, the phrase "after consultation with the Principal" was inserted between the word "Company" and the word "shall" in the first line of the quoted sentence. (Doc. 1 at 18). The parties dispute whether Bond Safeguard consulted with Ward before deciding to pay off the Riversea Plantation bond or before settling the claims against the Norris Lake bonds. Bond Safeguard argues that the factual dispute is meaningless, because the obligation to consult was not a condition precedent, and therefore any failure to consult would not constitute a breach.

-5-

Pursuant to OCGA § 13-3-4, "[a] condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." While conditions precedent are not favored in interpreting contracts, words such as "on condition that," "if," and "provided" are words of condition, and in the absence of any indication to the contrary, the employment of such words in a contract creates a condition precedent. *General Steel, Inc. v. Delta Bldg. Systems, Inc.*, 676 S.E.2d 451, 454 (Ga.App. 2009). In addition, express statements to the effect that a condition is to be construed as a condition precedent are entitled to be so construed in carrying out the intent of the parties. *Id.*

In the *General Steel* case, a handwritten insertion in a guaranty agreement required that the guarantor receive monthly statements as to his company's billings and payments. *Id.* at 453. He did not receive such statements, and when the other party sought to collect on the guaranty, he argued on summary judgment that the language of the agreement was at least ambiguous as to whether the statement requirement was a condition precedent. *Id.* The appellate court found that, as a matter of law, there was no ambiguity, and the statement requirement was not a condition precedent, because the agreement did not employ the necessary language – *i.e.*, words of condition or an express provision that the statement requirement was to be construed as a condition precedent. *Id.* at 454.

The same result holds in the instant case. The pertinent provisions of the Indemnity Agreement contain no words of condition and employ no express statements that the consultation requirement was to be construed as a condition precedent. As such, any failure by Bond Safeguard to consult with Ward before deciding whether to settle or defend a claim would not constitute a breach of the Indemnity Agreement.

-6-

**Damages – Reasonableness and Mitigation**

Finally, Ward asserts that the entry of a partial final money judgment would not be proper at this stage, even if he is liable on the Indemnity Agreement, because there are genuine issues of material fact as to the reasonableness of the amount of Bond Safeguard's settlement with regard to the Norris Lake bonds. Bond Safeguard, which had written almost $13 million worth of bonds on that development, determined that it would take $9 million or more to complete the project. (Doc. 47-1 at 9). Bond Safeguard paid Emerson Properties LLC ("Emerson"), which had purchased the development through a bankruptcy sale, $7 million in exchange for a release of the bonds. (Doc. 47-1 at 9). Ward complains that the settlement deal included an attempt to seek an agreement with the county in which the project was located to forego or delay a certain amount of the bonded work, which would leave somewhere between $3 million and $5.675 million in bonded work for Emerson to complete. Ward argues that by paying $7 million for, at most, $5.675 million in remaining obligations, Bond Safeguard failed to mitigate its damages.

However, this argument fails for a number of reasons. First, it is far from clear that Ward's calculations are correct. The numbers he employs are pulled out of different portions of different peoples' depositions, without context, making it impossible to say whether those figures mean what Ward claims they mean. In addition, the $5.675 million cost-to-complete figure did not exist in a vacuum; under Ward's description of events, that figure came about as the result of the settlement negotiations, which included securing an agreement with the county to drop one of the project's three phases. Thus, under Ward's theory, Bond Safeguard did not have a choice between paying $7 million or $5.675 million. Instead, it had a choice between paying $7 million or $9 million. Finally, the Indemnity Agreement provides that

> In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefor to the Company.

Ward's suggestion that the settlement with Emerson was not a "good deal" (Doc. 96 at 17-18) is not enough to suggest that there was any impropriety associated with the payment, and therefore it cannot be used to challenge the reasonableness of the sums paid by Bond Safeguard.

**Partial Summary Judgment**

Bond Safeguard seeks 1) partial summary judgment as to Ward's liability on the Indemnity Agreement, 2) partial summary judgment in its favor for the payments made in regard to the Riversea Plantation and Norris Lake bonds and 3) entry of a partial final money judgment against Ward for the $542,371.94 and the $7 million paid in connection with the Riversea Plantation and Norris Lake bonds. (Doc. 46 at 18-19). As demonstrated above, there is no genuine issue of material fact as to the first item, Ward's liability on the Indemnity Agreement. However, the Court concludes that Bond Safeguard is not entitled to the second and third items that it seeks.

The Complaint in this matter contains five counts, each of which is labeled a "Cause of Action." In the first count, Bond Safeguard seeks indemnification from Ward pursuant to the Indemnity Agreement.[1] In addition to the payments made in regard to the Norris Lake and Riversea Plantation bonds, the first count seeks indemnification for payments expected to be made in regard to bonds issued for a project in Rutherford County, North Carolina. (Doc. 1 at 9-10).

Rule 56(a) provides that a party claiming relief may move for summary judgment on "all or part of the claim." Rule 56(d) provides in pertinent part that "[i]f summary judgment is not

---

[1]The other counts include claims against Ward and others for such things as allegedly fraudulent transfers or for the imposition of equitable liens.

rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. . . . The fact so specified must be treated as established in the action." Fed.R.Civ.P. 56(d)(1). That same rule also provides that the court may render an interlocutory summary judgment on liability alone. Fed.R.Civ.P. 56(d)(2).

Thus, Rule 56 permits courts to grant partial summary judgment, and it specifically permits a court to grant summary judgment as to liability. However, the rule does not permit movants to seek or obtain judgment on a portion of a claim. *See, e.g.*, *Baker County Medical Services, Inc. v. Summit Smith L.L.C.*, 2007 WL 1229702 (M.D.Fla. April 25, 2007). The procedure set forth in 56(d) is "designed to be ancillary to a motion for summary judgment." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2737. The primary purpose of subsection (d)(1) is to "salvage some results from the judicial effort involved in evaluating a summary judgment motion and to frame narrow triable issues if the court finds that the order would be helpful with the progress of the litigation." *California Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F.Supp.2d 930, 939 (E.D.Cal. 2003).

What this means in the instant case is that the Court has the power to grant summary judgment as to liability on the Indemnity Agreement. However, the Court cannot grant summary judgment as to Ward's liability for the payments made in connection with the Riversea Plantation and Norris Lake bonds. Although Ward has failed to demonstrate the existence of a genuine issue of material fact as to these payments, the indemnification claim also involves payments which Bond Safeguard expects to make in regard to bonds for the Rutherford County project. As such, the entry of judgment in regard to just the Norris Lake and Riversea Plantation bonds would amount to judgment on part of a claim, which would improper. *See, e.g., Biggins v. Oltmer Iron*

*Works*, 154 F.2d 214 (7th Cir. 1946) (in suit for services rendered, reversing entry of partial summary judgment as to two of five items sued upon and stating that "[a]ll that plaintiff was entitled to at the time of the entry of the judgment was an order (not a judgment) fixing the amount of his claim no longer in dispute"). As the *Biggins* case notes, though Bond Safeguard is not entitled to the entry of judgment as to damages, the company entitled to an order determining that the amounts paid in connection with the Riversea Plantation and Norris Lake bonds are no longer in dispute. *See* Rule 56(d).

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Partial Summary Judgment (Doc. 45) filed by Bond Safeguard Insurance Company is **GRANTED IN PART AND DENIED IN PART.** The Court hereby enters partial summary judgment in favor of Bond Safeguard Insurance Company and against Defendant James Ward as to Ward's liability on the General Agreement of Indemnity. And it is further

**ORDERED** that the amount of Ward's liability under the General Agreement of Indemnity for the payments made by Bond Safeguard in connection with the bonds for the Riversea Plantation and Norris Lake projects is hereby fixed in the amount of $7,542,371.94 and shall be deemed established at trial. And it is further

**ORDERED** that, in all other respects, the motion is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 10, 2010.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party